UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CONRAD LEVY, individually and on          CIVIL ACTION NO. 6:16-cv-00043
behalf of all other similarly situated

VERSUS                                    JUDGE DRELL

SCHLUMBERGER TECH CORP.                   MAGISTRATE JUDGE HANNA

## MEMORANDUM  RULING

Before the court is the plaintiff's motion for conditional certification of a class

of allegedly similarly-situated plaintiffs under Section 216(b) of the Fair Labor

Standards Act ("FLSA"), approval of a proposed notification to putative class

members, and approval of a proposed consent form.  (Rec. Doc. 45).  The motion is

opposed.  No oral argument was held, and the motion was decided on the basis of the

briefs submitted by the parties.  Considering the evidence, the law, and the arguments

of the parties, and for the reasons fully explained below, the motion is GRANTED

IN PART and DENIED IN PART.  Accordingly, a conditional collective action class

consisting of "technical specialists working for Schlumberger Technology

Corporation and/or Smith International Inc. over the past three years who were paid

a salary and job bonus" is hereby certified, and additional orders are entered.

## BACKGROUND

This putative class action lawsuit was filed on January 12, 2016 by Conrad Levy, individually and on behalf of all others similarly situated, against "Schlumberger Tech Corp.," alleging violations of the FLSA.  Smith International, Inc. answered the suit (Rec. Doc. 8), identifying itself as Levy's former employer and the proper defendant, and explaining that it was incorrectly identified in the plaintiff's complaint as Schlumberger Technology Corporation.  In its corporate disclosure statement (Rec. Doc. 12), Smith explained (a) that it is a corporation wholly-owned by Schlumberger Holdings Corporation, with Schlumberger Limited being its ultimate parent company; and (b) that Schlumberger Technology Corporation is a separate but affiliated entity, whose ultimate parent company is also Schlumberger Limited.   In its answer, Smith denied that the plaintiff was employed by Schlumberger Technology Corporation and alleged that the plaintiff was employed by Smith from August 2011 to September 2013.   (Rec. Doc. 8 at 2).   The remuneration statements issued to the plaintiff display the word "Schlumberger" at the top left, but also have Smith International, Inc.'s name and address on them. (Rec. Doc. 55-2 at 6-27).  On a letter (Rec. Doc. 55-2 at 28) concerning compensation changes effective June 30, 2016, however, the word "Schlumberger" is at the top right of the page, and there is no reference to Smith.

-2-

Prior to 2010, Schlumberger Technology Corporation and Smith International, Inc. were unrelated oilfield service companies, providing specialized services to oil and gas exploration companies.  In August 2010, Schlumberger Technology Corporation acquired Smith and began integrating Smith's completions segment into its existing business.  (Rec. Doc. 55-1 at 1).  In August 2011, the plaintiff was hired by Smith as a Technical Specialist Tools, Level I, in Lafayette, Louisiana, and assigned to the packer product line.  (Rec. Doc. 55-2 at 1).  Smith classified the plaintiff as an exempt employee under the FLSA and paid him a fixed salary plus a bonus calculated on the basis of a portion of the personnel charge per day.  (Rec. Doc. 55-2 at 2).  During his tenure with Smith, the plaintiff's job duties and responsibilities stayed the same, but his job title periodically changed.  (Rec. Doc. 55-2 at 2).  He was variously referred to as a Core Completions Specialist, Completions Specialist, Technical Tool Specialist, Completions Field Equipment Operator, CPL Equipment Operator 2, CPL Equipment Operator 3, and Equipment Operator.  (Rec. Doc. 55-2 at 2).  On June 30, 2013, the plaintiff was reclassified as an Equipment Operator.  (Rec. Doc. 55-2 at 2).

According to Smith, this final reclassification was a result of the continuing integration of Smith into Schlumberger Technical Corporation, by which the plaintiff and other Technical Specialists were given an opportunity to participate in

Schlumberger Technical Corporation's Completions Specialist career path, which required in-depth technical training as well as exposure to financial; human resources; and health, safety, and environmental responsibilities; as well as exposure to various product lines. (Rec. Doc. 55-2 at 3). Technical Specialists who were selected for that career path were reclassified as Schlumberger Technical Corporation Completion Specialists, while Technical Specialists who were not selected for, or who chose not to participate in, that career path were reclassified as Equipment Operators. (Rec. Doc. 55-2 at 3).

From June 30, 2013 until the end of his employment with Smith, the plaintiff was classified as an Equipment Operator and paid an hourly rate plus overtime at the rate of time-and-a-half for each hour worked in excess of forty hours per week. (Rec. Doc. 55-2 at 2-3). In September 2013, Smith decided to close its Lafayette office. The plaintiff was offered a transfer to another office, but he declined that offer. On September 23, 2013, Smith offered the plaintiff a severance package, which he accepted on October 7, 2013. (Rec. Doc. 55-2 at 3-4).

In his complaint, the plaintiff alleged that he and his similarly situated coworkers, which he referred to in his complaint as "Completion Specialists" and in his motion as "Technical Specialists," were improperly classified as exempt employees and denied overtime wages. (Rec. Doc. 1 at 5). In his complaint, the

plaintiff alleged that he "has personal knowledge that all Completion Specialists performed the same general job duties and received similar compensation, without overtime pay." (Rec. Doc. 1 at 4). In the pending motion, he seeks conditional certification of this action as a collective action under 29 U.S.C. § 216(b) consisting of "Technical Specialists working for Schlumberger Tech Corp. at any time from [three years prior to the date the Court grants certification], to the present, who were paid a salary and job bonus." He also seeks (1) an order that judicial notice be sent to all putative class members, (2) approval of proposed notice and consent forms; (3) an order permitting the mailing and e-mailing of notices; (4) an order permitting class counsel to contact putative class members; (5) an order permitting the posting of notice and consent forms at the defendant's job sites and offices; (6) an order requiring the defendant to produce contact information for the putative class members; and (7) an order authorizing a sixty-day notice period for putative class members to join the case.

In support of the motion, the plaintiff attached his declaration, attesting that he was a Technical Specialist in the Completions Division, most of his time was spent performing technical and manual labor duties but no supervisory duties, he was paid a salary and bonuses but no overtime, all Technical Specialists in the Completions

Department performed the same type of work, and all were paid in the same way he was.  (Rec. Doc. 45-2).

Smith opposed the motion, arguing that (1) the plaintiff waived his right to bring this claim, (2) the plaintiff failed to identify others interested in joining the suit, (3) the plaintiff failed to demonstrate that he is similarly situated to the proposed class members, (4) the plaintiff and the other members of the proposed class were properly classified as exempt, (5) the plaintiff submitted only one supporting declaration, and (6) the proposed notice is improper.

## LAW AND ANALYSIS

### A.  LEGAL STANDARD

The FLSA sets a general minimum wage for employees engaged in commerce,[1] and it requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours.[2]  The FLSA also creates a cause of action for violations of its provisions, permitting a plaintiff to maintain an action on "behalf of himself. . . and other employees similarly situated."[3] The remedial nature and purpose of the FLSA "militate strongly in favor of allowing

---

[1]     29 U.S.C. § 206(a)(1).

[2]     29 U.S.C. § 207(a).

[3]     29 U.S.C. § 216(b).

cases to proceed collectively."[4]   A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact. . . ."[5]

Unlike class actions brought under Fed. R. Civ. P. 23, a collective action under the FLSA provides an "opt-in" rather than an "opt-out" procedure for potential plaintiffs,[6] stating that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[7]   District courts have discretionary

---

[4]    *West v. Lowes Home Centers, Inc.*, No. 6:09-1310, 2010 WL 5582941, at *3 (W.D. La. Dec. 16, 2010), report and recommendation adopted, No. 6:09-1310, 2011 WL 126908 (W.D. La. Jan. 14, 2011), quoting *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008).

[5]    *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Green v. Plantation of Louisiana*, No. 2:10-0364, 2010 WL 5256354, *3 (W.D. La. Nov. 24, 2010), report and recommendation adopted, No. 2:1-0364, 2010 WL 5256348 (W.D. La. Dec. 15, 2010); *Boudreaux v. Schlumberger Technology Corp.*, No. 6:14-2267, 2015 WL 796602, *2 (W.D. La. Feb. 25, 2015).

[6]    *Mooney v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)

[7]    29 U.S.C. § 216(b).

power to implement the collective action procedure in FLSA actions by facilitating notice to potential plaintiffs.[8]  Notice must be "timely, accurate, and informative."[9]

Courts recognize two methods for making the "similarly situated" determination and deciding whether notice should be given.  These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach.[10]  The Fifth Circuit has found it unnecessary to determine which method is most appropriate.[11]  However, the prevailing method seems to be the "two-step" approach.[12]  Based on the foregoing, this Court finds that the "two-step" method is the preferred method in the Fifth Circuit and will use it in this case.

The Fifth Circuit described the *Lusardi* approach in detail:

The first determination is made at the so-called "notice stage."  At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.

---

[8]      *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 667 (N.D. Tex. 2007), citing *Hoffman-La Roche Inc.*, 493 U.S. at 169.

[9]      *Hoffmann-La Roche Inc.*, 493 U.S. at 172.

[10]      See *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo. 1990).

[11]      *Mooney*, 54 F.3d at 1216.

[12]      See, e.g., *Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 435 (E.D. La. 2010); *LaChapelle*, 513 F.2d at 288 (finding a "fundamental" difference between Rule 23 class actions and FLSA collective actions).

-8-

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.   If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."   The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.  If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.   The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.[13]

Because this case is currently at the "notice stage," this Court must decide whether conditional certification should be granted and whether notice of the action and the right to opt-in should be given to potential class members.

"At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist.  The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits[,] and other supporting documentation."[14]  "At the notice stage,

---

[13]      *Mooney*, 54 F.3d at 1213-14 (internal footnote signal omitted).

[14]      *Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La., 2007) (internal citations omitted).

'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'"[15]  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class where potential class members receive notice and the opportunity to opt-in."[16]  The lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan."[17]

## B.   CONDITIONAL CERTIFICATION

In this case, Mr. Levy bears the burden of making a preliminary factual showing that there are similarly-situated individuals and that he and these other individuals were all paid in accordance with a single decision, policy, or plan.  As noted above, no proof is necessary at this stage, just substantial allegations.  To meet this burden, Mr. Levy submitted his own declaration, in which he described the work that he performed as a Technical Specialist in the Completions Division of

---

[15]      *Mooney*, 54 F.3d at 1214 n. 8, quoting *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.,1988).

[16]      *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 2598988, at *3 (E.D. La. June 25,2008), quoting *Mooney*, 54 F.3d at 1214 (internal quotation marks omitted).

[17]      *Mooney*, 54 F.3d at 1214 n. 8.

"Schlumberger Tech Corp., formerly Smith" (Rec. Doc. 45-2 at 2); asserted that, based on his own personal knowledge, there were numerous Technical Specialists in that division working out of shops throughout the United States (Rec. Doc. 45-2 at 3); asserted that all Technical Specialists in that department performed the same job (Rec. Doc. 45-2 at 3); and asserted that "all Technical Specialists were paid under the same pay practice, a salary and various bonuses without overtime." (Rec. Doc. 45-2 at 3.) He further alleged that he and the other Technical Specialists routinely worked significant amounts of overtime (Rec. Doc. 45-2 at 4) and that during the entire time that he "worked at Schlumberger," neither he nor the other Technical Specialists were paid overtime (Rec. Doc. 45-2 at 3).

Smith argues that Mr. Levy's allegations are insufficient to support conditional certification because Mr. Levy (1) waived his right to bring this claim, (2) failed to identify others interested in joining the suit, (3) failed to demonstrate that he is similarly situated to the proposed class members, (4) along with the other members of the proposed class was properly classified as exempt, and (5) submitted only one supporting declaration.

### 1.   MERITS ARGUMENTS ARE DISREGARDED AT THIS STAGE

Two of the defendant's arguments go to the merits of the claim.  Smith argues that Mr. Levy waived his right to bring an FLSA claim when he accepted a severance

package in September 2013 and, in connection therewith, signed a waiver and release agreement.  The effect of that agreement is the subject of a motion to dismiss (Rec. Doc. 21) that is currently pending.  Smith also argues that Mr. Levy and the other members of the proposed class were properly classified as exempt from overtime payments under the FLSA.  Whether an exemption applies is a merits-based defense "that courts in this district typically hold to be irrelevant at this initial, notice stage of the case."[18]  This Court is not currently faced with resolving the merits of this case. Accordingly, analysis of these topics is reserved until a ruling on the merits of the case is required.

## 2. IDENTIFICATION OF AND DECLARATIONS FROM OTHER PLAINTIFFS ARE UNNECESSARY

Two of the defendant's remaining arguments are related.  Smith argues that Mr. Levy failed to identify other persons who are interested in joining the suit and failed to submit the declarations of any persons other than himself in support of conditional certification.  Mr. Levy need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan.[19]  Due to the lenient burden imposed on a plaintiff at the notice stage, it is not

---

[18]    *Jones v. Cretic Energy Services, LLC*, 149 F.Supp.3d 761, 774 (S.D. Tex. 2015).

[19]    *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d 902, 916–17 (S.D. Tex. 2010).

necessary that Mr. Levy submit more than one declaration in support of his claims.[20]
Similarly, it is not necessary that he present evidence at this stage that others actually
want to opt in to the lawsuit.[21]   In the jurisprudence, this is sometimes described as
a "chicken and egg problem" because the defendant would have the plaintiff identify
persons who wish to opt-in to the lawsuit before notice of the lawsuit has been
disseminated while the plaintiff is seeking to have a notice sent out in an effort to
locate those persons who might be interested in opting-in.[22]   This Court finds that the
submission of a single declaration and the failure to identify others who desire to opt-
in to the lawsuit are not sufficient bases on which to deny the motion for conditional
certification.

### 3.    OTHER SIMILARLY SITUATED INDIVIDUALS

The named plaintiffs bear the burden of establishing that they are "similarly
situated" to the members of the proposed class.[23]   The FLSA does not define the term
"similarly situated."   However, under the jurisprudence, whether employees are

---

[20]    See, e.g., *Rendon v. Global Technical Solutions, LLC*, No. 15-242, 2015 WL
8042169, at *9 (E.D. La. Dec. 4, 2015).

[21]    See, e.g., *Villareal*, 751 F.Supp.2d at 916.

[22]    *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. July 18,
2011); *Detho v. Bilal*, No. H-07-2160, 2008 WL 2962821, at *3 (S.D. Tex. July 29, 2008).

[23]    *Lima*, 493 F.Supp.2d at 798, citing *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562,
1567-68 (11th Cir. 1991).

similarly situated is determined in reference to their job requirements and with regard to their pay provisions.[24]  "Similarly situated" does not mean identically situated.[25]  Thus, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement."[26]  However, "if the job duties among potential members of the class vary significantly, then class certification should not be granted."[27]  Likewise, if the named plaintiffs and the potential class members are compensated differently, class certification is not appropriate.[28]

The defendant argues that Mr. Levy failed to demonstrate that he is similarly situated to the proposed class members.  More particularly, the defendant argues (a) that there is no support for Mr. Levy's assertion that all putative class members across

---

[24]    *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. ,2008); *Lima*, 493 F.Supp.2d at 798.

[25]    *Boudreaux*, 2015 WL 796602 at *3.

[26]    *Boudreaux*, 2015 WL 796602 at *3; *Tolentino v. C & J Spec-Rent Services, Inc.*, 716 F.Supp.2d 642, 652 (S.D. Tex. 2010).

[27]    *Boudreaux*, 2015 WL 796602 at *3; citing *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) and *Harris v. Fee Transportation Services, Inc.*, No. 3:05CV0077-P, 2006 WL 1994586, *5 (N.D. Tex. May 15, 2006).

[28]    *Green v. Plantation of Louisiana, LLC*, No. 2:10-0364, 2010 WL 5256354, at *4 (W.D. La. Nov. 24, 2010), report and recommendation adopted, No. 2:10-0364, 2010 WL 5256348 (W.D. La. Dec. 15, 2010), citing *Lentz*, 491 F.Supp.2d at 669 and *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (collective action certification denied based on the fact that the potential plaintiffs held different job titles, with different payment structures – piece-rate, hourly, and salary).

the country had the same duties he did because he only worked for the packer product line and only worked out of Lafayette, (b) that there is no support for Mr. Levy's assertion that all putative class members were paid under a common pay policy or practice, and (c) that it would be improper to certify a class for a time period postdating the named plaintiff's period of employment.

The declarations that Smith submitted in support of its arguments indicate that there was an ongoing effort to integrate Smith's preexisting "Completions segment" into Schlumberger's "existing business" (Rec. Doc. 55-2 at 2), suggesting that there was an overall plan with regard to the companies' Technical Specialist employees such as Mr. Levy.  Smith presented evidence that Mr. Levy was hired as a Technical Specialist Tools, Level I, assigned to the packer product line (Rec. Doc. 55-2 a 1) and submitted the job descriptions for Technical Specialist Tools I, Technical Specialist Tools II, and Technical Specialist Tools, Sr. (Rec. Doc. 55-2 at 5).  Nothing in the job descriptions indicates that those positions are located only in Lafayette or are different in Lafayette than in other places.  Smith concedes that, during approximately two years of employment, Mr. Levy had eight different job titles, at least partially due to "early job mapping of positions between Smith International and STC [Schlumberger Technical Corporation] position designations" but his "job duties and responsibilities remained consistent throughout his employment" (Rec. Doc. 55-2).

-15-

This also suggests an effort to develop uniformity in job titles and responsibilities throughout the companies.  Smith offered no evidence supporting its argument that an employee such as Mr. Levy would have significantly different job duties and responsibilities depending on the geographical location where he worked, the identity of his supervisor, the client for whom the job was being performed, or the type of tool that was being used.  Smith did argue, however, that there were meaningful differences between the duties of a "Completions Specialist" and an "Equipment Operator," but the declarations submitted by Smith indicate that Technical Specialists such as Mr. Levy were selected for and given the option of becoming "Completions Specialists."  (Rec. Docs. 55-1 at 3, 55-2 at 3).  The creation of the "Completions Specialist career path" (Rec. Doc. 55-2 at 3) seems to have been a company-wide decision offering this new position to Technical Specialists on a company-wide basis, consistent with the "continued integration of Smith International into STC [Schlumberger Technical Corporation]" and "to align the compensation" (Rec. Doc. 55-1 at 3) of Levy and others throughout the two companies.  Nothing presented by Smith refutes Mr. Levy's personal observations regarding the duties and pay received by himself and other Technical Specialists.  Indeed, the cited information set forth in the declarations submitted by Smith supports a conclusion that there was an ongoing

effort, following Schlumberger's acquisition of Smith, to make job duties and pay scales uniform.

The fact that there may be some differences between Mr. Levy and the other members of the proposed class does not preclude conditional certification.  "Courts have repeatedly stressed that Plaintiffs must only be similarly – not identically – situated to proceed collectively."[29]  Conditional certification is appropriate when there is "a demonstrated similarity among the individual situations. . . [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."[30]   Whether employees are "similarly situated" for purposes of the FLSA is determined in reference to their "job requirements and with regard to their pay provisions."[31]  Here, Mr. Levy offered his own personal observations with regard to job duties and pay rates, which were not refuted by the defendant.  His substantial allegations are sufficient, at this early stage of the litigation, to support conditional certification of a class.

---

[29]     *Prejean v. O'Brien's Response Mgmt., Inc.*, No. 12-1045, 2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013), quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008).

[30]     *Xavier*, 585 F. Supp. 2d at 877-78.

[31]     *Lima*, 493 F.Supp.2d at 798, citing *Dybach*, 942 F.2d at 1567-68.

Smith's final argument is that if a class is conditionally certified, it should be limited to the time period beginning on the date of certification and running back three years, excluding Mr. Levy from the class and resulting in a class period that postdates the sole named plaintiff's period of employment.  The implication of this argument is that Mr. Levy is not a proper class representative.

FLSA claims are generally subject to a two-year statute of limitations, but the limitations period is three years for willful violations.[32]  Mr. Levy likely selected a three-year period for the class definition because it coincides with the statute of limitations.  Courts in the Fifth Circuit have often held that, given the low standard employed at the first stage of the evaluative process and the fact-intensive nature of the question of willful conduct, a plaintiff is not required to prove willfulness at the notice stage of conditional certification.[33]  Because additional discovery will likely reveal whether a three-year statute of limitations is applicable, this Court finds that conditional certification of a three-year class is appropriate at this stage, subject to any motion for decertification following discovery.

---

[32]     29 U.S.C. § 255(a).

[33]     See, e.g., *Marshall v. Louisiana*, No. 15-1128, 2016 WL 279003, at *11 (E.D. La. Jan. 22, 2016).

Courts are not consistent in determining whether the time period properly runs from the date of the complaint or from the date of the court's order conditionally certifying the matter as a collective action.[34]  Therefore, this Court need not decide at this juncture whether the time period at issue runs relative to the date of the complaint or to the date of conditional certification.  Furthermore, the issue of whether the named plaintiff is a proper class representative is an issue best reserved for the second stage of the two-step process and best raised in a motion to decertify the class.[35] Because the plaintiff has alleged enough to satisfy his initial burden at this stage, notice may be provided to individuals employed by the defendant within a three-year window preceding the date of Mr. Levy's complaint.

---

[34]    See, *Busby v. Dauterive Contractors, Inc.*, No. 6:14-cv-03366, 2016 WL 430608, at *6 (W.D. La. Feb. 3, 2016); *Case v. Danos and Curole Marine Contractors, L.L.C.*, No. 14-2775, 2015 WL 1978653 at *7 (E.D. La. May 4, 2015); *Mejia v. Bros. Petroleum, LLC*, No. 12–02842, 2014 WL 3530362, at *4 (E.D. La. July 16, 2014); *White v. Integrated Electronic Technologies, Inc.*, No. 11-2186, 12-359, 2013 WL 2903070, at *10 (E.D. La. June 13, 2013), comparing *Montgomery v. Wal-Mart Stores, Inc.*, No. 3:03cv539, 2007 WL 2783348, at *3 (S.D. Miss. Sept. 24, 2007) (providing notice to class members "who were employed during the past three years as hourly associates"), and *Foraker v. Highpoint Sw. Servs., LP*, No. H-06-1856, 2006 WL 2585047, at *5 (S.D. Tex. Sept. 7, 2006) (providing notice to class members who worked in certain positions "during the three year period before this ruling"), with *Williams v. Bally's Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *3 (E.D. La. May 5, 2006) (providing notice to class members allegedly denied overtime wages and were employed with defendant employer for the five years prior to the date of the court's order), and *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Al. 1999) ("Plaintiffs, therefore, will be authorized to give notice of this lawsuit to a limited class, consisting of those hourly wage employees who worked at Defendant's. . . restaurant during the three (3) years preceding the filing of this lawsuit.").

[35]    *Reyes v. Texas Ezpawn, L.P.*, 459 F.Supp.2d 546, 552 (S.D. Tex. 2006).

In summary, this Court finds that, given the early stage of this litigation and the lenient evidentiary burdens imposed at this early stage, Mr. Levy has sufficiently alleged that there are other similarly-situated individuals who should be notified of his existing lawsuit and afforded an opportunity to opt-in, if they so desire. Accordingly, conditional certification will be granted.

## C.   <u>NOTICE</u>

The FLSA vests the district court with discretionary authority to facilitate notice to potential plaintiffs.[36]  Because Mr. Levy has made the requisite showing for conditional certification, given the number of potential class members and the limited information available to the plaintiffs, this Court finds that this case presents an appropriate situation for the Court to involve itself in the notice process.[37]  Mr. Levy proposes that notice be sent to all potential class member by First Class United States Mail, by e-mail, and by posting the notice at all of the defendant's jobsites.  Smith argues that using multiple means of notifying the potential class members would suggest that the court endorses Mr. Levy's claims and impermissibly encourages notice recipients to join the litigation.  In support of this argument, Smith cited to a

---

[36]     29 U.S.C. § 216(b).  See, also, *Lima*, 493 F. Supp. 2d at 800, citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169.

[37]     *See Hoffmann-La Roche, Inc.*, 493 U.S. at 169.

case in which the court held that reminder notices and recorded telephone messages were unnecessary to effectuate notice.[38]  Smith presented no evidence and cited no court decision holding that posting notices at a worksite for the proposed length of time is unduly intrusive or otherwise ineffective or improper.  Accordingly, this Court finds the defendant's argument lacking in merit.  Further, this Court agrees with the plaintiff that notice by both U.S. Mail and e-mail would be appropriate.[39]

Smith also objects to some of the language set forth in the proposed notice.  When considering the content of such a notice, courts often find that these issues are best resolved by mutual agreement of the parties.[40]  Accordingly, Mr. Levy's request for approval of the proposed notice and consent forms will be denied at this time, and the parties will be ordered to meet and confer regarding the proposed notice and consent forms and to attempt to resolve any and all disputes in good faith as ordered below.

## CONCLUSION

For the foregoing reasons,

---

[38]   *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, No. H-11-2266, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013).

[39]   *Mejia*, 2014 WL 3530362, at *4.

[40]   See, e.g., *Busby v. Dauterive Contractors, Inc.*, 2016 WL 430608, at *7; *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734 at *6 (E.D. La. Aug. 10, 2015); *Perkins v. Manson Gulf, L.L.C.*, No. 14-2199, 2015 WL 771531 at *5 (E.D. La. Feb. 23, 2015).

IT IS ORDERED that the plaintiff's motion for conditional certification, for approval of a proposed notification to putative class members, and for approval of a proposed consent form (Rec. Doc. 45) is GRANTED IN PART and DENIED IN PART.  More particularly,

IT IS ORDERED that the motion is granted to the extent that this action is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b), with the plaintiff class defined as "technical specialists working for Schlumberger Technology Corporation and/or Smith International Inc. over the past three years who were paid a salary and job bonus."

IT IS FURTHER ORDERED that, in all other respects, the motion is DENIED.

IT IS FURTHER ORDERED that the defendant shall have fourteen days from the date of this order to provide the plaintiff with the names of all potential members of the collective class in Excel format, along with their current or last known mailing addresses, e-mail addresses, telephone numbers, and dates of employment.

IT IS FURTHER ORDERED that the parties shall meet, confer, and thereafter submit to this Court a joint proposed notice and consent forms no later than twenty-one days after the date of this order.  If the parties are unable to agree on the content of the proposed notice and consent forms, the parties shall telephone chambers and request a telephone status conference with this Court.

IT IS FURTHER ORDERED that potential class members may opt in to this collective action if:  (1) they have mailed, faxed, or e-mailed their consent form to counsel for the class within sixty days after the notice and consent forms have been mailed, e-mailed, or posted; or (2) they show good cause for any delay.

Signed at Lafayette, Louisiana, on this 23rd  day of September 2016.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-23-